James G. Volk, Appellant *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Submitted on briefs, January 31, 1977, to Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Louise A. Howells,* for appellant.

*George Phillips,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 13, 1977:

The Pennsylvania Unemployment Compensation Board of Review (Board) denied benefits on the basis of a lack of compelling and necessitous reason for voluntary termination[1] to James G. Volk (Claimant). We reverse the Board.

Claimant was last employed by General Electric Company (G.E.) as a wheelabrater and grinder earning a wage of $3.67 1/2 per hour for the period April 8, 1974 up to and including his last day of employment on March 27, 1975. On the final day of his employment, Claimant's foreman informed him that he was to receive a rating of "job failure" due to his unsatisfactory performance. In response, Claimant requested an "open transfer" in which he would have ten days to find other work within the G.E. plant. The open transfer policy of G.E. provides that in the event that an individual is unable to secure another mutually satisfactory position in the plant within the ten day limit, he is considered to have *voluntarily* severed his employment relationship. Claimant found no position within ten days and subsequently sought benefits which were denied by the Bureau of Employment Security. Upon appeal, the referee reversed, granting benefits, and in turn, the Board reversed pursuant to Section 402(b)(1); hence, the instant appeal.

The essence of Claimant's appeal to this Court is his challenge to the asserted lack of substantial evi-

---

[1] Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

dence bottoming the Board's findings of fact numbers five and six, which state:

5. The claimant was aware that if he could not locate other employment within the company during the ten-day period allowed, he could be considered to have voluntarily resigned.

6. Continued work was available to claimant had he not chosen to exercise his open transfer option.

A review of the record belies the argument that Finding No. 5 is unsupported by substantial evidence. With regard to that finding, the record reveals the following testimony:

Q. Do you have any further testimony?

A. I would like to ask the representative as the employer's supervisor if he described the nature of what an open transfer meant. If the employer was aware of how many days he had to look and the procedure that he needed to follow in order to get another position.

. . . .

A. Yes, I did on three separate occasions . . . when I was first approached with it by Jim I explained to him the whole route that he would have to take if he took an open transfer. He did ask about a job failure and he was told that he would more than likely be getting one and he reported that he did not like the job and there was too much pressure on the job for him. He couldn't handle the job. On another occasion he came in the office and the same thing was explained to him in detail. Definitely explained about the ten days to find a job; not receiving pay for these ten days and being removed from payroll after ten days if he failed to find a job. The third occasion was a call on the telephone. I was in my supervisor's office at the time. He

called in there; I talked to him on the phone and I again explained to him the procedures of an open transfer.

Further, our review reveals testimony of Claimant himself indicating that he had requested and been granted an open transfer prior to the one requested on March 5, 1975. Most certainly, Claimant knew the procedure involved and the consequences which could result from the March 5 requested transfer.

However, with regard to Claimant's argument that Finding No. 6 is unsupported by substantial evidence, and that the termination was in fact involuntary, an examination of the record shows that there is not one scintilla of substantial evidence to support a finding of continued available work for Claimant. Rather, as Claimant properly points out, the record discloses that the ''job failure'' classification given prior to Claimant's voluntary choice of open transfer was in reality synonymous with discharge. To this end, the employer's representative testified as follows:

Job failure indicates that an employee is being *discharged from a position* for failure to perform on a job . . . on job failure an employee has the right to look for 10 days for other suitable work in the plant. Strictly on open jobs. He has no right to displace another employee or to take anyone else's job away in any manner. He is being discharged from his regular position and he has 10 days to find another job. Whether or not he is kept on his regulation position. (Emphasis added.)

This testimony clearly indicates that discharge from his current position was a reality for Claimant and that the only available jobs were ones currently unstaffed in the plant. The reality of failure to secure an unstaffed job tells us that there was no available work. Neither Claimant's wheelabrater and

grinder position nor any unstaffed position were in fact available to Claimant and under these circumstances, we are unable to hold that the termination was *voluntary* and without cause of necessitous and compelling nature as defined in Section 402(b)(1).

Faced with imminent involuntary discharge from his current position, Claimant took the only available route to find another position in the plant when he requested open transfer. In these circumstances, the Board erred in finding voluntary termination.

Accordingly, we

### ORDER

AND Now, this 13th day of April, 1977, the order of the Unemployment Compensation Board of Review, No. 131091, dated April 21, 1976, is reversed and compensation must be awarded according to law.